# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————————————

No. 99-4198

————————————

Charles L. Robinson,    *

    *

   Appellant,    *

    *   Appeal from the United States

  v.     *   District Court for the

    *   District of Nebraska.

Valmont Industries,    *

    *

   Appellee.    *

————————————

Submitted: October 16, 2000

Filed: January 31, 2001

————————————

Before HANSEN, MURPHY, and BYE, Circuit Judges.

————————————

HANSEN, Circuit Judge.

Charles Robinson appeals the district court's[1] grant of summary judgment in favor of his employer, Valmont Industries, in this racial discrimination case. Robinson claims he was the target of a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17 (1994). We affirm.

———————————————————

[1]The Honorable William C. Cambridge, United States District Judge for the District of Nebraska.

I.

Robinson, an African-American male, worked for Valmont as a painter's associate. At the time of the summary judgment proceedings, Robinson had been employed by Valmont for twelve years. Robinson filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC) in November 1997. In his EEOC complaint, Robinson alleged several instances of workplace discrimination.

The first of these incidents occurred in August 1997.[2] After showing Robinson a news article recounting the assault of a Haitian immigrant by New York City police officers, Robinson's coworker brandished a broom handle emblazoned with the phrase "Haitian Death Stick" and stated, "This is what they need to keep them in line." (District Ct. Mem. & Order at 2.) Two months later, Robinson discovered a clothesline tied in the shape of a noose in his locker at Valmont. In November 1997, Robinson found a drawing of an upside down "T" and the words "a redneck's family tree" anonymously placed at his workstation. Robinson interpreted the drawing to be a hanging tree.[3] The next month Robinson overheard a coworker refer to the coworker's black Labrador as "African-American." This comment was not directed at Robinson but was made while he was present in an employee break room. Finally, an incident occurred in 1998 when an employee altered a "caution" sign by depicting a monkey with Robinson's name printed below the drawing. Robinson did not report the "caution" sign event to Valmont management.

Robinson filed suit on August 21, 1998, asserting both that he was subjected to a racially hostile work environment and that Valmont retaliated against him. Valmont

[2]Robinson alleges an earlier incident of racially motivated harassment which occurred in 1991. We do not address this claim because it is neither timely nor has Robinson established a continuing violation. See 42 U.S.C. § 2000e-5(e)(1).

[3]It is unclear from the record whether Robinson brought this incident to Valmont's attention.

moved for summary judgment, which the district court granted on both claims. Robinson now appeals the denial of his hostile work environment claim.

## II.

We review the district court's grant of summary judgment de novo. Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 964 (8th Cir. 1999). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, illustrates that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Mems v. City of St. Paul, Dep't or Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Such discriminatory harassment includes conduct so "severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (internal quotations omitted) (alteration in original).

To succeed with his hostile work environment claim, Robinson must demonstrate that: (1) he is a member of a protected class; (2) unwelcome harassment occurred; (3) there is a causal nexus between the harassment and his protected-group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) Valmont knew or should have known of the harassment and failed to take prompt and effective remedial action. See Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999). There is no dispute that Robinson is a member of a protected class or that he was subjected to several instances of unwelcome, racially-motivated harassment. Assuming, arguendo, but without deciding, that those incidents rose to the level as to

3

be "severe or pervasive enough to create an objectively hostile or abusive work environment," we find that Valmont's response to those incidents was prompt and adequate. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). When assessing the reasonableness of an employer's remedial actions, the court may consider the amount of time that elapsed between the notice of the harassment and the remedial measures taken, including any disciplinary action against the harasser or other options available to the employer such as employee training sessions. Stuart v. Gen. Motors Corp., 217 F.3d 621, 633 (8th Cir. 2000).

In our view, Valmont promptly and adequately responded to and addressed each incident that Robinson reported to management. After the Haitian death stick incident, Valmont responded by immediately imposing a three-day suspension against the perpetrator and, within two weeks of the incident, requiring the entire department to attend diversity training. When Robinson reported finding the noose in his locker, Valmont promptly began an investigation by questioning employees and encouraging any witnesses to come forth with information surrounding the incident. Because no witnesses came forward, Valmont installed a surveillance camera in the locker room in hopes of identifying the culprit.[4] Furthermore, Valmont required the employee who described his dog as an "African-American" Labrador to apologize to Robinson for his conduct and placed a written warning in the employee's record, delineating that further conduct of this type could result in termination. Valmont had no opportunity to respond to the defaced "caution" sign incident because it went unreported by Robinson or anyone else.

---

[4]Valmont never did discover who placed the noose in Robinson's locker. There is some evidence that Robinson may have placed it in his locker himself to buttress his discrimination claim, but we refrain from weighing the credibility of this evidence, as did the district court, and conclude only that Valmont reacted reasonably to remedy the situation.

Robinson does not attempt to discredit either the promptness or the adequacy of the responsiveness of Valmont's actions, but instead, simply disputes the conclusions to be drawn from these actions. Because Robinson offers nothing to dispute either the promptness or adequacy of Valmont's investigative and corrective actions, the district court's award of summary judgment in favor of Valmont was correct. See Bailey v. Anchor Packaging, 216 F.3d 720, 720 (8th Cir. 2000) (affirming grant of summary judgment when employer initiated prompt and appropriate remedial action after employee lodged a harassment complaint).

## III.

Consequently, the judgment of the district court is affirmed.

A true copy.

   Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

5