# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2535

_____

Melissa Diaz,                              *
                                           *
    Appellant,                       *
                                           *
                                           *   Appeal from the United
    v.                               *   States District Court for the
                                           *   Eastern District of Arkansas.
Swift-Eckrich, Inc., a foreign             *
corporation, fictitiously known as         *
ASE Deli/Foodservice Company,              *
                                           *
    Appellee.                        *

_____

Submitted: December 13, 2002

Filed: February 6, 2003 (Corrected 2/14/03)

_____

Before MORRIS SHEPPARD ARNOLD, RILEY, and SMITH, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Melissa Diaz appeals a grant of summary judgment to her former employer Swift-Eckrich, Inc., in her employment discrimination action brought under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e through 2000e-17. Ms. Diaz, who is Hispanic, alleged that she was subjected to a hostile work environment because of her sex and because of her national origin. She also alleged that because of her national origin she was not given a raise in a timely manner and was eventually terminated from her employment. We reverse in part and affirm in part.

## I.

We first address Ms. Diaz's claim that she was subjected to a hostile environment that was caused by sexual harassment. Under Title VII, a discrimination charge must be filed with the Equal Employment Opportunity Commission (EEOC) no later than 180 days after the "alleged unlawful employment practice occurred," *see* 42 U.S.C.A. § 2000e-5(e)(1). Ms. Diaz filed an EEOC charge in January 2000. According to Ms. Diaz's deposition testimony, the last time she was subjected to sexual harassment was in the winter of 1998-99, more than 180 days before she filed the charge. Although Ms. Diaz points out on appeal that Swift-Eckrich discharged her in December 1999, no evidence connects her termination to the alleged sexual harassment. *Cf. National R.R. Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2075 (2002). We therefore agree with the district court that this claim is time barred.

## II.

Ms. Diaz also claimed that she was subjected to a hostile environment because she is Hispanic. Viewing the evidence favorably to Ms. Diaz and giving her the benefit of all reasonable inferences, *see Luciano v. Monfort, Inc.*, 259 F.3d 906, 908 (8th Cir. 2001), we conclude that there are genuine issues of fact that require us to reverse the entry of summary judgment with regard to this claim.

Ms. Diaz began working for Swift-Eckrich in August, 1998. On her first day, a co-worker, Phoebe Oler, told her that she had no business working there because "Hispanics should be cleaning," that Hispanics are "stupid," and that Ms. Diaz was "stupid." Ms. Oler added that she did not want to be in the same room with Ms. Diaz. Ms. Diaz reported the incident to Carl Dosher, who supervised her and Ms. Oler. When Ms. Diaz "went to him and ... told him what was going on" and explained that Ms. Oler was "making remarks" to her, he walked away.

Ms. Diaz testified at her deposition that throughout her employment, Ms. Oler's taunting was "continuous": Ms. Oler called Ms. Diaz "stupid," made rude noises

around her, and laughed at her. On one occasion shortly after Ms. Diaz was hired, Mr. Dosher was present when Ms. Oler criticized Ms. Diaz's work, called her "stupid," and threatened her, and Ms. Diaz said that Ms. Oler "was prejudiced." That day Mr. Dosher moved Ms. Oler to another work area, but the next day she returned to Ms. Diaz's work area. Ms. Oler later transferred to become a training coordinator, but she continued to direct rude noises toward Ms. Diaz and to laugh at her. Sometimes she would come to where Ms. Diaz was working, look at her across the table, and laugh at her; this made it difficult for Ms. Diaz to work. Ms. Diaz complained to Mr. Dosher about Ms. Oler's conduct five or six times or more; on these occasions he shushed Ms. Diaz, told her to pay no attention to it and that she would be all right, or "laughed it off." Ms. Oler's conduct did not change.

According to Ms. Diaz's deposition testimony, another co-worker, Debbie Hulgan, repeatedly stated that "Hispanics should scavenge for beans on the floor," while staring at Ms. Diaz and laughing. Ms. Diaz testified that Ms. Hulgan's "comments about Hispanics" in Ms. Diaz's work area "kept on and on." Ms. Diaz "kept telling" Mr. Dosher that Ms. Hulgan was "doing stuff like that, making those comments still," but she did not know if Mr. Dosher reported it. New people who were hired asked Ms. Diaz whether she had heard what Ms. Hulgan was saying about Hispanics. In the fall of 1999, when Ms. Hulgan was a training coordinator in another department, she hit Ms. Diaz on two occasions and called her "trash paper." Ms. Diaz notified one of the supervisors when Ms. Hulgan hit her on the head, and the supervisor said that he would report it. She testified that she did not notify anyone when Ms. Hulgan hit her again because "they weren't doing anything about it." She added that "[d]ifferent things kept on happening and happening and nobody was doing anything about it."

In October 1999, Ms. Diaz reported the harassment to Dave Grzeciak, who was then her supervisor. At a meeting between Mr. Grzeciak, Karen Lugeanbeal (the human resources manager), and Ms. Diaz, Ms. Diaz explained everything that had

happened to her since she began working at Swift-Eckrich. According to Ms. Diaz, Ms. Lugeanbeal "made a comment like, so what, I've made remarks about Hispanics, too," after which Ms. Diaz began to cry and stated that she had to take medication because of the stress. Swift-Eckrich offered evidence that Ms. Diaz's accusations were investigated and "could not be substantiated," but that a meeting was held at the end of October in which Mr. Grzeciak warned employees that those who made racial or demeaning comments would be disciplined up to and including discharge.

In November 1999, another co-worker stood across the table from Ms. Diaz, stared at her, and announced that she was prejudiced against Ms. Diaz and did not want to be in the same room with her. She then made fun of Ms. Diaz's accent and asked her whether she was from Mexico. When Ms. Diaz said that she was from New Mexico, the co-worker responded, "What's the difference?" After Ms. Diaz reported this incident, the co-worker apologized, saying that she had been told to do so by people in "the office." This employee did not engage in any further harassment.

To support this claim for hostile environment harassment by non-supervisory co-workers, Ms. Diaz had to show that she was a member of a protected group; she was subjected to unwelcome harassment; the harassment was because of her membership in the group; the harassment affected a term, condition, or privilege of her employment; and Swift-Eckrich knew or should have known about the harassment but "failed to take prompt and effective remedial action." *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999).

Ms. Diaz is Hispanic and, according to her testimony, she was subjected to unwelcome harassment. We note that some of the conduct, such as Ms. Oler's rude noises, laughter, and statements that Ms. Diaz was "stupid," were not obviously based on the fact that Ms. Diaz is Hispanic. But "[a]ll instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII if they are part of a course of conduct which is tied to evidence of discriminatory animus." *Id.*

-4-

at 701. Here we believe that Ms. Oler's early comments, in which she demeaned Hispanics and specifically referred to both Hispanics and Ms. Diaz as "stupid," are sufficient for a fact-finder to find that her ongoing harassment of Ms. Diaz was based on her national origin. Similarly, we believe that Ms. Hulgan's offensive references to Hispanics may support a finding that she hit Ms. Diaz as part of the same pattern of harassment.

To establish that the harassment altered a term, condition, or privilege of her employment, Ms. Diaz had to show that it was "severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). We must look at "all the circumstances" to assess the degree of the harassment, "includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; ... whether it unreasonably interferes with an employee's work performance" *id.* at 23; "physical proximity to the harasser[;] and the presence or absence of other people," *see Carter*, 173 F.3d at 702. Although infrequent rude behavior does not create a hostile environment, such claims may be "based on the cumulative affect of individual acts," *see Morgan*, 122 S. Ct. at 2073.

Here we believe that a fact-finder could conclude that the harassment was frequent, that the demeaning comments and conduct were specifically directed at Ms. Diaz from a close range, and that other employees were sometimes present. She testified that Ms. Oler's offensive conduct was "continuous" and Ms. Hulgan's demeaning remarks "kept on and on," and both employees were in her work area. Co-workers questioned Ms. Diaz about Ms. Hulgan's remarks regarding Hispanics. As in *Hathaway v. Runyon,* 132 F.3d 1214, 1223 (8th Cir. 1997), "[d]espite her complaints, [the plaintiff] was forced to work in close proximity to [the harassers], which added to the hostility of her environment." Also, although in order to be actionable the "[h]arassment need not be so extreme that it produces tangible effects

on job performance or psychological well-being," *Carter*, 173 F.3d at 702, according to Ms. Diaz both her attendance at work and her mental health suffered as a result of her working environment, and she required psychiatric treatment and medication. We conclude that the evidence created a material question of fact as to whether she was subjected to pervasive harassment based on her national origin that altered the conditions of her employment.

Because those who engaged in the harassment did not have supervisory power over Ms. Diaz, she was required to show that Swift-Eckrich knew or should have known about the harassment and failed to respond in a prompt and effective manner. *See id.* At her deposition, Ms. Diaz testified that on her first day at work Ms. Oler made several derogatory comments to her regarding Hispanics. Ms. Diaz testified that she told her supervisor, Mr. Dosher, "what was going on" and that Ms. Oler was "making remarks." We believe that it may be inferred from this testimony that Ms. Diaz notified her supervisor of the discriminatory remarks made by Ms. Oler. Ms. Diaz testified that she continued to report Ms. Oler's conduct to him, in addition to reporting some of the incidents to another individual who "reported to" Mr. Dosher. In addition, Ms. Diaz "kept telling" Mr. Dosher about Ms. Hulgan's offensive remarks regarding Hispanics.

Based on all of the evidence, we believe a material question of fact exists as to whether Mr. Dosher's knowledge may be imputed to Swift-Eckrich. *See Hall v. Gus Const. Co.*, 842 F.2d 1010, 1016 (8th Cir.1988); *cf. Jacob-Mua v. Veneman*, 289 F.3d 517, 523 (8th Cir. 2002). Mr. Dosher was Ms. Diaz's supervisor when she repeatedly reported the harassment to him. He apparently had the authority to discipline employees because after one incident he met with Ms. Diaz and Ms. Oler and removed Ms. Oler from the area for the rest of the day. Also, we think that a fact-finder could conclude that it was reasonable for Ms. Diaz to believe that Mr. Dosher had a duty to report the harassment to others in the company. *See Sims v. Health Midwest Physician Services Corp.*, 196 F.3d 915, 921 (8th Cir. 1999). In fact, late

in her employment Ms. Diaz reported the harassment to her then supervisor, Mr. Grzeciak, and he contacted the human resources manager and held an employee meeting to address the issue.

We also conclude that Ms. Diaz offered sufficient evidence that Swift-Eckrich failed to take prompt and effective remedial action to end the harassment. In assessing this aspect of the claim, we may consider the amount of time between notice of the harassment and any remedial action, "the options available to the employer such as employee training sessions [and] disciplinary action taken against the harasser(s), ... and whether or not the measures ended the harassment." *Stuart v. General Motors Corp.*, 217 F.3d 621, 633 (8th Cir. 2000).

Ms. Diaz reported the harassment that occurred on her first work day to Mr. Dosher, and he walked away. Ms. Diaz testified that the harassment continued throughout her employment and that she repeatedly reported the incidents involving Ms. Oler and Ms. Hulgan to Mr. Dosher, but he was not responsive. Based on the evidence, the only action he took from August 1998 until October 1999 was to remove Ms. Oler from Ms. Diaz's work area for part of one day, while telling them to stay away from each other. According to Ms. Diaz, in October 1999 she discussed the ongoing harassment with the human resources manager, who minimized the problem by telling Ms. Diaz that she herself had made remarks about Hispanics. Swift-Eckrich held an employee training session at the end of October but did not discipline any employees. Ms. Diaz testified that Ms. Oler's taunting continued throughout her employment, which did not end until December. Although another employee who verbally attacked Ms. Diaz shortly before her termination was required to apologize, we note that the apology (as well as the employee training session) occurred over a year after the harassment began and was reported. Based on all of the circumstances, we believe that a question of material fact exists as to the promptness and adequacy of Swift-Eckrich's response.

We therefore conclude that Ms. Diaz offered sufficient evidence to allow her to survive summary judgment with respect to her hostile environment claim resulting from harassment based on her national origin.

We disagree, however, with Ms. Diaz's contention that her harassment claim is further supported by evidence that Swift-Eckrich must have disclosed to her co-workers that she was taking medication for stress. According to Ms. Diaz, her psychiatrist told the human resources manager that she was taking medication and somehow Ms. Diaz's co-workers obtained this information without Ms. Diaz's permission. Although Ms. Diaz attempts to rely on this evidence, we do not believe that she has established a connection between the alleged disclosure and her claim of discriminatory harassment.

## III.

Ms. Diaz also argues that although she received a pay increase for passing a skills test in May 1999, she should have received the increase sooner than she did. Swift-Eckrich presented payroll records indicating that Ms. Diaz did, in fact, receive an increase in her hourly rate in May 1999. Because Ms. Diaz offered no evidence to clarify when she should have received the increase, when she did receive it, the amount she should have received, or the amount that she did receive, we conclude that her evidence is insufficient to create a material issue of fact as to this claim.

## IV.

Finally, Ms. Diaz contends that she was terminated because she is Hispanic. Assuming that she established a *prima facie* case of discrimination, Swift-Eckrich offered a legitimate non-discriminatory reason for discharging her. *See Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir.2002). Ms. Diaz was involved in an altercation with a co-worker in December 1999. At that time she and the other employee were reprimanded, although Ms. Diaz disputes Swift-Eckrich's evidence that she was warned that another similar incident could result in her termination.

Only two days later she had a dispute with a different co-worker. Swift-Eckrich states that it discharged Ms. Diaz based on these two occurrences.

Ms. Diaz contends that the reason offered for her termination is a pretext for discrimination because the other woman involved in the second incident, who was not Hispanic, was suspended rather than terminated. But Ms. Diaz's evidence is not probative of pretext because she has not established that the other employee was similarly situated to her. *See id.* at 691-92. Swift-Eckrich denies that this co-worker was involved in a previous incident, and Ms. Diaz has offered no evidence to the contrary. The employer also offered evidence that another employee, who was not Hispanic, was terminated after being involved in two confrontations with co-workers. We therefore conclude that Ms. Diaz has not offered sufficient evidence to create a material issue of fact as to whether she was terminated because she is Hispanic.

V.

Accordingly, we reverse the district court's judgment with respect to Ms. Diaz's claim of harassment on account of her national origin and we remand for further proceedings. With respect to all of Ms. Diaz's other claims, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.