# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3637

_____

|  |  |  |
|---|---|---|
| Tommy Reedy, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Quebecor Printing Eagle, Inc., | * | |
| and its representatives, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  April 18, 2003

Filed: June 30, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Tommy Reedy, who is black, brought suit against  Quebecor Printing Eagle, Inc., under 42 U.S.C. § 1981, claiming that he was subjected to a hostile work environment and constructively discharged because of his race.  When the district court granted summary judgment in favor of Quebecor on both claims, Mr. Reedy appealed.  We reverse in part and affirm in part.

I.

We review grants of summary judgment *de novo*. *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999). "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see* Fed. R. Civ. P. 56(c).

In analyzing intentional discrimination claims brought under § 1981, we apply the same standards as we would apply to similar Title VII claims. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1050 (8th Cir. 2002). Thus, to prevail on his hostile work environment claim Mr. Reedy must show that he was a member of a protected group, that he was subjected to unwelcome harassment, that the harassment was because of his membership in the group, that the harassment affected a term, condition, or privilege of his employment, and that Quebecor knew or should have known about the harassment but failed to take prompt and effective remedial action. *See Diaz v. Swift-Eckrich, Inc.*, 318 F.3d 796, 800 (8th Cir. 2003).

It is undisputed that Mr. Reedy was subjected to some level of unwelcome harassment because of his race. Our inquiry therefore turns to whether that harassment affected a term, condition, or privilege of his employment, and, if it did, whether Quebecor took prompt and effective remedial action in response to it. We first note that these are two distinct inquiries; that is, courts have generally not taken into account the remedial actions of the employer when deciding whether the harassment was "severe or pervasive" enough, *see Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998), to have affected a term, condition, or privilege of the plaintiff's employment. Thus, a series of harassing incidents might be sufficiently severe or pervasive even if the employer took prompt and effective remedial actions. *See, e.g., Robinson v. Valmont Industries*, 238 F.3d 1045, 1047-48 (8th Cir. 2001).

Of course, in such a case the steps taken by the employer to remedy the situation would preclude its liability. *See id.*

In order to recover, Mr. Reedy must demonstrate that the harassment was sufficiently "severe or pervasive" to create a work environment that was both objectively and subjectively hostile. That is, to prevail Mr. Reedy must show that his work environment was "one that a reasonable person would find hostile or abusive, and one that [he] in fact did perceive to be so." *Faragher*, 524 U.S. at 787 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). In *Harris*, the Supreme Court held that in determining whether a plaintiff has made out a claim, a court must look "at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Although *Harris* dealt with a claim of a sexually hostile work environment, a consideration of the matters that *Harris* enumerated is appropriate in cases claiming a racially hostile work environment as well. *See Faragher*, 524 U.S. at 786-87.

Our review of the record (which consists primarily of Mr. Reedy's deposition testimony) reveals five incidents that can plausibly be characterized as involving racial harassment. One incident involved a fellow Quebecor employee. Apparently, the employee agreed to bring back lunch for a group of Quebecor employees, including Mr. Reedy. When he failed to produce the lunch that Mr. Reedy had ordered, Mr. Reedy asked him whether he had bought it. The employee responded by throwing money at Mr. Reedy and saying, "Fucking nigger, go your own self the next time." The employee's father (also a Quebecor employee) laughed as he witnessed the incident. Mr. Reedy did not file a complaint or otherwise mention this incident to a supervising employee.

Mr. Reedy also witnessed two ugly occurrences of relevance. In one incident, two employees approached Rickey Huntley, a black man, called him a "punk ass nigger" and told him that they were going to "whip his punk ass." Mr. Reedy did not involve himself in the dispute, but was later called into the office of the plant manager, Kevin Morris, to confirm Mr. Huntley's account of the incident. As a result of the investigation, one of the offending employees received a one-week suspension and the other was terminated. On another occasion, Mr. Reedy witnessed an employee accusing Travis Moore, another black employee, of stealing his car radio. After exclaiming that "all you niggers steal," the employee threw a metal blade at Mr. Moore. The offender was terminated after an investigation.

Lastly, in his deposition Mr. Reedy describes incidents involving the exhibition of racial graffiti. According to that testimony, during September, 1998, the phrase "Tommy smoked crack, white crack" was written in a men's bathroom stall (one of two at the plant) and the word "coon" was written below Mr. Reedy's name. In addition, there appeared a drawing of an ape accompanied by the phrase "all niggers must die." Mr. Reedy reported the graffiti to Keith Bender, his immediate supervisor, and to Mr. Morris. Soon thereafter, the graffiti was painted over.

Mr. Reedy claims that the racial graffiti reappeared in October 1998. This time, he says, his name was written below the phrase "kill all niggers" on the bathroom handrail. Mr. Reedy again reported the offending bathroom graffiti, to which Mr. Morris allegedly responded, "I got it off once. What do you want me to do, tear the wall down?" This graffiti was not removed until after Mr. Reedy left the employment of Quebecor.

The district court held that Mr. Reedy's account of these incidents, even if completely true, did not make out a submissible claim based on a hostile work environment. We disagree. Although we acknowledge that this is a close case, in our view Mr. Reedy has made out a claim.

In granting summary judgment, the district court relied heavily on our decision in *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839 (8th Cir. 2002). In that case, we held that a plaintiff's claim of hostile work environment was not submissible where there was evidence that the plaintiff was the target of several racial epithets, that a poem with racist messages was circulated among the plant employees, and that drawings of "KKK," a swastika, and a hooded figure appeared on the walls of the men's restrooms. *Id.* at 843-44. We believe, however, that Mr. Reedy's situation is distinguishable from *Woodland* in three important respects. First, while the aggregate number of racially hostile incidents in *Woodland* is comparable to the number of incidents about which Mr. Reedy testified, the frequency of their occurrence is substantially different. The handful of incidents in *Woodland* occurred over the span of four to five years. *Id.* at 843. In contrast, Mr. Reedy experienced a similar number of incidents within only seven months. Second, whereas in *Woodland* the racial graffiti was quickly removed, *id.*, the second instance of graffiti at Quebecor remained in place until Mr. Reedy left approximately five months later. In our view, these two differences make the harassment that Mr. Reedy suffered substantially more pervasive than that in *Woodland*.

But it is a third difference that in our mind separates this case most obviously from *Woodland*: The message of hate expressed to Mr. Reedy through the graffiti was physically threatening in a way that the graffiti in *Woodland* was not. While it is true that the symbols employed in *Woodland* ("KKK," a swastika, and a hooded figure) were generically threatening, they were not directed specifically at the plaintiff. In contrast, what appeared in the Quebecor bathroom stalls can be described as nothing less than a death threat aimed directly and specifically at Mr. Reedy–a death threat, moreover, that stayed on the wall for five months. We think that this threat can fairly be characterized as severe. We thus do not believe that *Woodland* controls in this situation. Indeed, we think that Mr. Reedy's has produced evidence of harassment that is at least as severe and pervasive as that produced in *Bowen v.*

-5-

*Missouri Dep't of Social Serv.*, 311 F.3d 878 (8th Cir. 2002), and *Ross v. Douglas County, Nebraska*, 234 F.3d 391 (8th Cir. 2000). In both of those cases we held that the plaintiffs had made out a submissible hostile work environment claim.

We conclude that an objective person who was experiencing what Mr. Reedy's testimony says he did would find that his work environment was offensive, or, in the language of *Faragher*, 524 U.S. at 787, "hostile or abusive." Likewise, the fact that Mr. Reedy reported the graffiti to his supervisors on both occasions is sufficient to demonstrate that Mr. Reedy subjectively found that his work environment was offensive.

We also believe that Mr. Reedy offered sufficient evidence that Quebecor knew or should have known about the harassment but failed to take prompt and effective remedial action. *See Diaz*, 318 F.3d at 800. While Quebecor did respond adequately to most of the incidents that they were aware of, their alleged handling of the death threat strikes us as anything but a prompt and effective remedial action. In fact, a response like the one that Mr. Morris is said to have given to Mr. Reedy is probably worse than no response at all. When a plaintiff shows that an employer has a mixed record with regard to handling harassing incidents, we have generally determined that there is a genuine issue of material fact, to be decided by a jury, as to whether the employer's remedial actions have been prompt and effective. *See, e.g., Carter v. Chrysler Corp.*, 173 F.3d 693, 702-03 (8th Cir. 1999). We thus have no trouble concluding that a reasonable jury could find that Quebecor failed in its duty to respond appropriately to the harassment directed at Mr. Reedy.

We therefore hold that Mr. Reedy produced sufficient evidence to make out a submissible case on his claim based on a hostile work environment.

II.

Mr. Reedy also argues that the district court erred in granting summary judgment on his constructive discharge claim. "An employee is constructively discharged if an employer renders the employee's working conditions so intolerable that the employee is forced to quit." *Duncan v. General Motors Corp.*, 300 F.3d 928, 935 (8th Cir. 2002), *cert. denied*, 123 S. Ct. 1789 (2003). An employee must show that his employer intended to force him to quit or, at a minimum, that the employee's resignation was reasonably foreseeable as a consequence of his working conditions, *id.*, and we have previously noted that a "plaintiff must show more than just a Title VII violation by [his] employer in order to prove that [he] has been constructively discharged," *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1247 (8th Cir. 1998).

Our review of the evidence convinces us that Mr. Reedy has failed to present sufficient evidence for a jury to find that a reasonable person in Mr. Reedy's position would have found the conditions of his employment so intolerable that he would be forced to quit. We therefore agree with the district court that Mr. Reedy has not made out a claim for constructive discharge.

III.

We reverse the entry of summary judgment in favor of Quebecor on Mr. Reedy's claim of a racially hostile work environment and remand for a trial on the merits. The entry of summary judgment in favor of Quebecor on Mr. Reedy's constructive discharge claim is affirmed.

BEAM, Circuit Judge, concurring and dissenting.

I concur in Part II of the court's opinion. However, I respectfully dissent from the result reached in Part I, although I agree it is a close question.

Mr. Reedy learned about Quebecor Printing Eagle from Ira Williams, an employee of the company and a family friend. Mr. Reedy had no complaints about how Quebecor handled the reported incidents until Mr. Williams was discharged for poor attendance. Less than three weeks later, Mr. Reedy walked off the job in the middle of his shift and did not return, filing a lawsuit approximately four months later. Considering this turn of events, I am inclined to agree with the district court's analysis of Mr. Reedy's contentions and would affirm on the basis of the court's well-reasoned opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.