**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2401
_____

Janet Marie Hill,                          *
                                           *
   Plaintiff - Appellant,                  *    Appeal from the United States
                                           *    District Court for the
   v.                                      *    Eastern District of Missouri.
                                           *
St. Louis University,                      *
                                           *
   Defendant - Appellee,                   *


_____

Submitted:  January 15, 1997

Filed:   September 4, 1997
_____

Before BEAM, ROSS, and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

Janet Marie Hill appeals the district court's[1] grant of summary judgment to St. Louis University on her employment discrimination claims arising under the Missouri Human Rights Act (MHRA), Mo. Ann. Stat. § 213.010 - .130 (West 1993 and Supp. 1996), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e - 2000e-17 (1994), and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 - 634 (1994). She also appeals the imposition of sanctions for her attorney's ex parte communication with a department chair at St. Louis University. We affirm.

I.

Viewed in the light most favorable to Hill, the record reveals the following facts.

Hill is a former employee of the Parks College of St. Louis University (SLU), where she served as the director of the Career Services department for many years. When the department underwent some reorganization in 1991, Hill's position as "director" was reclassified as "coordinator" of the department. Although the change did not affect her pay or her duties, Hill was assigned to new supervisors and her budget was cut.

Hill's performance evaluations declined significantly after the reorganization. According to Hill, the new supervisors "overdocumented" her job performance and reprimanded her for deficiencies that had no basis in fact. The documentation in the record indicates her performance was deemed deficient in five ways: "1) failure to co[m]plete tasks and assignments; 2) complaints from prospective employers, administrators, students, faculty, and staff; 3) repeated cancellation of career

---

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

2

development workshops; 4) failure to develop internship and cooperative education opportunities; and 5) failure to timely post job vacancies from employers." (Appellant's App. at 644.) On December 1, 1993, Hill was informed she could either resign or be terminated. She submitted her letter of resignation two days later, on December 3, 1993.

On May 16, 1994, Hill went to the federal Equal Employment Opportunity Commission (EEOC) office intending to file a complaint. There, she completed an Intake Questionnaire, stating she had been forced to resign. An EEOC employee gave Hill a complaint form and told her to complete and return with it within about three weeks. Hill returned and formally filed her verified complaint with the EEOC on June 9, 1994. This complaint included, inter alia, claims of illegal discrimination under the ADEA, Title VII, and the MHRA. Litigation ensued.

During discovery, SLU learned that Hill's counsel had contacted Dr. Richard Andres, Chair of the Aerospace Technology Department at the Parks College, about a letter Dr. Andres and five other department chairs had signed concerning dissatisfaction with Hill's performance. SLU's counsel sent Hill's counsel a letter warning that this contact, absent permission from SLU or its counsel, would likely violate Disciplinary Rule 7-104 of the Code of Professional Responsibility and Rule 4.2 of the Rules of Professional Conduct, which both prohibit direct, ex parte contact with an adverse party that is represented by counsel. Despite this warning, Hill's counsel contacted and interviewed Dr. Andres, and obtained an affidavit from him.

SLU filed a motion for sanctions, seeking either a dismissal of the case or disqualification of Hill's counsel from further participation in the case. On March 14, 1996, the district court granted the motion, but instead of dismissal or disqualification of counsel, the court struck Dr. Andres' affidavit from the record as to SLU's summary judgment motion, declared the affidavit inadmissible at trial, forbade Hill's counsel from calling Dr. Andres as a witness at trial unless he had been deposed prior to trial, and

3

ordered Hill's counsel to pay all of SLU's attorney fees and costs in litigating the motion for sanctions. The court did not quantify the attorney fees and costs in the order.

In the meantime, SLU had filed a motion for summary judgment on the merits of Hill's claims. The district court granted SLU's motion on April 19, 1996. The court found it lacked jurisdiction to consider the MHRA claims, because Hill had failed to file a formal complaint with the Missouri Commission on Human Rights within 180 days of the alleged discriminatory acts. In addition, the district court found Hill's disparate treatment claims under the ADEA and Title VII fail to raise a genuine issue of material fact as to whether SLU's proffered reason for terminating Hill (inadequate performance) was actually pretext for discrimination. On May 17, 1996, Hill filed a notice of appeal to this court.

## II.

### A. MHRA Claim

When a complaint is not filed within 180 days, the Missouri Commission on Human Rights lacks jurisdiction to conduct any proceedings and the claim is barred. See Mo. Ann. Stat. § 213.075; Southwestern Bell Tel. Co. v. Comm'n on Human Rights, 863 S.W.2d 682, 684 (Mo. Ct. App. 1993). To meet this jurisdictional requirement, a complaint must be "verified" and must set forth the particulars of the claim. Mo. Ann. Stat. § 213.075(1). The Missouri Commission and the EEOC have a work-share agreement, and a complaint filed with the EEOC is considered to be filed with the Missouri Commission on the same date. Id. § 213.075(2).

The district court correctly found it lacked jurisdiction to consider Hill's MHRA claims. She resigned from her position at SLU on December 3, 1993, but did not file her verified complaint with the EEOC (and thus, constructively, with the Missouri Commission) until June 9, 1994. Because her complaint was filed after the 180-day

4

statutory period had expired, the district court had no jurisdiction to consider her MHRA claims.

Hill strenuously argues that equitable estoppel should apply because someone working for the EEOC misinformed her, leading her to file her complaint too late for purposes of the MHRA. Because the Missouri courts have held that the 180-day filing deadline is jurisdictional, however, the doctrine of equitable estoppel is inapplicable. Hill's citation to numerous cases applying equitable estoppel and waiver in the ADEA and Title VII contexts is unhelpful, because unlike the MHRA, the filing deadlines for those federal statutes are not jurisdictional. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392-93 (1982) (holding that the filing deadline under Title VII "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); Anderson v. Unisys Corp., 47 F.3d 302, 305-06 (8th Cir.) (stating that the filing deadline for an ADEA claim was not jurisdictional and therefore subject to equitable tolling and estoppel), cert. denied, 116 S. Ct. 299 (1995). Moreover, the Intake Questionnaire that Hill completed, though filed within the 180-day period, does not suffice as a complaint, because this preliminary document was not verified and did not set out the particulars of Hill's complaint. See Mo. Ann. Stat. § 213.075(1); Hodges v. Northwest Airlines, Inc., 990 F.2d 1030 (8th Cir. 1993). In short, whether or not someone in the EEOC misinformed Hill, her estoppel argument fails under the MHRA because an equitable doctrine simply cannot overcome a jurisdictional bar. We therefore hold that Hill's claim under the MHRA is barred for failure to file a complaint with the Missouri Commission or the EEOC within 180 days of the alleged discriminatory act.

B. ADEA and Title VII Claims

In her ADEA and Title VII claims, Hill alleges that her supervisors treated her disparately from her younger and male counterparts in that she was subjected to "overdocumentation" (Appellant's Br. at 10); she received reprimands for deficiencies

that had no basis in fact; her budget was cut; and she was reclassified with a less prestigious title, rendering her less effective in her job. She contends this disparate treatment led to her constructive discharge. The district court granted SLU's motion for summary judgment on these claims.

We review a grant of summary judgment de novo, using the same standards of Federal Rule of Evidence 56(c) as applied by the district court. Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1331 (8th Cir. 1996). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995). A disputed fact is not material unless it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

This is a pretext case, to which we apply the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and its progeny. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Ryther v. Kare 11, 108 F.3d 832, 836-38 (8th Cir.) (en banc), cert. denied, 1997 WL 181004 (U.S. June 27, 1997). We apply this analysis in both the ADEA and the Title VII contexts. Id. at 836. Under the burden-shifting framework, Hill must establish the elements of a prima facie case: (1) that she is within the protected class of people; (2) that she was qualified to perform her job; (3) that her employment was terminated; and (4) after her dismissal, she was replaced by someone younger (ADEA) or of the opposite gender (sex discrimination under Title VII). Rothmeier, 85 F.3d at 1332 n.7.[2]

---

[2]We note this is not a reduction-in-force case, for which the prima facie elements differ from those we have enumerated. See Holley v. Sanyo Mfg. Co., 771 F.2d 1161, 1165-66 (8th Cir. 1985).

If Hill establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden of production shifts to SLU to articulate a legitimate, nondiscriminatory reason for terminating her. Ryther, 108 F.3d at 836. Once SLU produces such a reason, the presumption disappears and Hill bears the burden of proving that SLU's proffered reason was pretextual and the real reason for her discharge was discrimination. Id.

We agree with the district court's thorough and well-reasoned opinion, finding that Hill's ADEA and Title VII claims fail as a matter of law. Assuming, arguendo, that Hill established a prima facie case, and this is no small assumption on these facts, she did not adduce evidence raising a genuine issue as to whether SLU's proffered legitimate reason for terminating Hill -- her poor work performance -- was pretextual. Moreover, the only evidence even remotely probative of a prohibited discriminatory intent is a statement Hill's supervisor made a week after Hill resigned, noting that he wanted to hire someone new to bring "fresh blood" to the position. This obtuse comment is simply not sufficient to give rise to an inference of discrimination based upon either age or gender.

Hill claims the district court erred in construing her claim as a wrongful discharge claim, rather than a constructive discharge. This alleged error is immaterial, because the fighting issue is not whether there was an adverse employment action, that is, whether she was actually or constructively discharged.[3] Instead, this case turns on whether Hill adduced evidence supporting an inference that SLU's proffered reasons for discharging her (either actually or constructively) were false and that SLU in fact

---

[3]The constructive discharge doctrine allows an employee who has resigned from a position to bring a wrongful discharge claim when the employee can prove that the employer intentionally created a work environment so intolerable that the employee was "essentially forced to leave the employment." Bradford v. Norfolk Southern Corp., 54 F.3d 1412, 1420 (8th Cir. 1995). In this case, SLU concedes it essentially terminated Hill.

based its decision upon her age or gender. She failed to create any genuine issue of material fact on those questions.

Hill points to what she deems are numerous factual errors by the district court. For example, she complains that the district court misstated the facts when it noted that SLU's reasons for terminating Hill "included but were not limited to" five areas of poor performance, (Appellant's App. at 644), because the record indicates only the five areas, not any more. We do not see how this argument furthers her case. As to Hill's claims of "overdocumentation," failure to inform her of what was expected of her, and reprimands for alleged job deficiencies, these claims appear to attack SLU's business practices and do not evidence a discriminatory animus based upon age or gender. Her claims of falsified job performance evaluations are unsupported allegations not competent to defeat summary judgment. Given the district court's thorough analysis of Hill's claims, we simply state that we have carefully reviewed this record and conclude, as did the district court, that the facts of this case do not support a reasonable inference of sex or age discrimination.

We remind Hill that the ADEA and Title VII are not meant to transform "at will" employment into perpetual employment where equal treatment is guaranteed to all employees and termination is legal only "for cause." Nor do these statutes entitle courts to "sit as super-personnel departments," second-guessing the wisdom of businesses' personnel decisions. Hutson, 63 F.3d at 781. Rather, these statutes serve the narrow purpose of prohibiting discrimination based on certain, discreet classifications such as age, gender, or race. These statutes do not prohibit employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices. Because Hill's evidence does not raise an inference of prohibited discriminatory intent under either the ADEA or Title VII, her causes of action for disparate treatment must fail.

8

C. Attorney Sanctions

Finally, Hill contends the district court erred in imposing sanctions for her counsel's violation of Rule 4.2 of the Model Rules of Professional Conduct and Disciplinary Rule 7-104(A)(1). SLU responds that the issue is not properly before this court, because Hill did not file her notice of appeal within 30 days of the sanctions order and, alternatively, that the district court did not abuse its discretion by imposing the sanctions.

We must first address SLU's jurisdictional argument. We begin with the general proposition that a "sanction[s order] against present counsel to a party [is] immediately appealable as a final decision under [28 U.S.C.] § 1291 and under the Cohen collateral order doctrine." Crookham v. Crookham, 914 F.2d 1027, 1029 n.4 (8th Cir. 1990) (internal quotations and citations omitted). Thus, as a general matter, a notice of appeal from a sanctions order must be filed within 30 days from the entry of the order. See Fed. R. App. P. 4(a)(1). "Timely filing is not merely a procedural requirement, but is mandatory and jurisdictional." United States v. Fitzgerald, 109 F.3d 1339, 1342 (8th Cir. 1997) (internal quotations omitted).

Like other orders, however, a particular sanctions order may not be final in that it may leave something for the court to do besides execute the judgment. See Union Pacific R.R. v. United Transp. Union, 3 F.3d 255, 258 (8th Cir. 1993) (citing Catlin v. United States, 324 U.S. 229, 233 (1945)), cert. denied, 510 U.S. 1072 (1994). With this principle in mind, we have held that a judgment awarding attorney fees for bad faith damages, but not fixing the amount of the fees, is not a final, appealable order. Maristuen v. National States Ins. Co., 57 F.3d 673, 678-79 (8th Cir. 1995). Nor is a determination of liability in contract normally final until controversial determinations of damages have been made. See St. Mary's Health Ctr. of Jefferson City v. Bowen, 821 F.2d 493, 497-98 (8th Cir. 1987) (noting that if the determination of damages is "mechanical and uncontroversial," immediate appeal is allowed).

9

In the instant case, the district court entered its sanctions order on March 14, 1996, but did not quantify the amount of the sanctions. On April 19, 1996, the district court entered a judgment granting SLU's summary judgment motion, thus triggering the 30-day period for filing the notice of appeal on the merits of her case. Fed. R. App. P. 4(a)(1); Fed. R. Civ. P. 58. Hill filed her notice of appeal on May 17, 1996, from both the sanctions order and the grant of summary judgment. The district court had not yet reduced the sanctions to a sum certain, however, and thus, we hold that the sanctions order was not yet final. Accord Discon, Inc. v. Nynex Corp., 4 F.3d 130, 132 (2d Cir. 1993) (holding sanctions order not final where the amount of sanctions had not yet been determined).

On August 27, 1996, the court ordered payment of $1,921.85 for the attorney fees owed under the sanctions order, rendering the sanctions order a final, appealable order. At that time, Hill's notice of appeal from the sanctions order became effective. Fed. R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry."). Hill's notice of appeal from the sanctions order was therefore then timely, and we consequently have jurisdiction to review her claim. We now turn to the merits of Hill's appeal from the sanctions.

Rule 4.2 of the Missouri Supreme Court Rules of Professional Conduct states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Missouri Supreme Court Rules, Rule 4.2 (1996); see also id., Code Comparison (noting that Disciplinary Rule 7-107(A)(1) is substantially identical). Rule 4.2 is "meant `to prevent lawyers from taking advantage of uncounselled lay persons and to preserve the integrity of the lawyer-client relationship.'" Graham v. United States, 96 F.3d 446, 448 (9th Cir. 1996) (quoting the Model Rules of Prof. Conduct 4.2 (1) cmt. (1992)). Rule 4.2 protects not only individual parties but also organizational

parties, such as SLU. The commentary to Rule 4.2 sets out three categories of people with whom opposing counsel may not communicate when an organization is a party: (1) persons having managerial responsibility on behalf of the organization, (2) persons whose acts or omissions in connection with the matter litigated may be imputed to the organization, and (3) persons whose statements may constitute an admission on the part of the organization. The Supreme Court of Missouri adopted this commentary and its three-category test in State ex rel Pitts v. Roberts, 857 S.W.2d 200, 202 (Mo. 1993) (en banc).

The district court held that Dr. Andres falls within the group of people Hill's attorney was prohibited from contacting, because Dr. Andres' position as a department chair requires him to perform managerial duties. We agree with the district court's assessment and find no abuse of discretion in the court's imposition of sanctions for violating the ethical rules. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (standard of review).

Hill does not dispute the district court's conclusion that Dr. Andres had managerial responsibilities; instead, she contends that his responsibilities were totally unrelated to Hill's job and that even with these responsibilities, he functioned essentially as a faculty member not a manager. We disagree. Dr. Andres' managerial responsibilities place him squarely within the first category of persons protected from communication by opposing attorneys. That he was not Hill's supervisor is immaterial. Therefore, any ex parte communication by Hill's counsel with Dr. Andres was a clear violation of the ethical rules, and the district court did not abuse its discretion in imposing the sanctions it did.

III.

For the above reasons, we affirm the judgment of the district court.

11

A true copy.

   Attest:

          CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.