# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2840

_____

| | | |
|---|---|---|
| Shareif Elmahdi, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Marriott Hotel Services, Inc., a | * | District Court for the |
| Delaware Corporation, doing business | * | Western District of Missouri. |
| as Kansas City Airport Marriott; | * | |
| Joseph M. Evano, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: April 17, 2003

Filed: August 6, 2003

_____

Before BOWMAN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Shareif Elmahdi brought suit against Marriott Hotel Services and Joseph Evano, Marriott's Executive Chef, alleging harassment, retaliation, and age, race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 to 634, and 42 U.S.C. § 1981. Elmahdi also alleged state-law claims

for assault and battery. A jury found in favor of Marriott and Evano. Elmahdi now appeals the verdicts and we affirm.

## I

Elmahdi is a 52-year-old native of Sudan who came to the United States in 1991. In February 1992, he was hired as a night-cleaner at the Kansas City Airport Marriott Hotel. Elmahdi was later assigned to the kitchen, where he was supervised by Evano, and worked there in various capacities until January 1999, when he was fired following a confrontation with a hotel guest. Elmahdi testified he was working the buffet line when an intoxicated guest made racially derogatory statements to him. Elmahdi argued with the guest causing Marriott to suspend him. Marriott investigated the incident and terminated Elmahdi three days later.

Elmahdi sued Marriott and Evano alleging a race-, sex- and age-based hostile work environment. Elmahdi claimed he was denied promotions and other privileges of employment and was terminated because of his race, sex and age. Additionally, Elmahdi alleged Evano committed the Missouri common law torts of assault and battery against him. Elmahdi contends Evano 1) repeatedly touched him in a sexually inappropriate manner, 2) repeatedly made sexually explicit comments, 3) mocked Elmahdi's religion, 4) said Elmahdi was too old for additional training, 5) referred to Elmahdi as "boy" and "black boy" and described Africans as having big penises, and 6) disciplined Elmahdi more harshly than other kitchen employees.

The district court[1] granted partial summary judgment in favor of Marriott and Evano on Elmahdi's claims for discriminatory discharge based on race, sex and age.[2] Elmahdi was allowed to go forward with his claims of 1) sex- and age-based hostile work environment for the period May 28, 1998 through January 14, 1999, in violation of Title VII and the ADEA, 2) race-based hostile work environment for the period October 20, 1995 through January 14, 1999, in violation of § 1981, 3) assault and battery arising out of conduct occurring between October 20, 1998, through December 31, 1998, and 4) discriminatory failure to promote Ehmahdi to culinary lead in June 1996, in violation of § 1981.

At trial, Elmahdi testified Evano first touched him inappropriately in 1993 and the touching was "a continuous thing" throughout his employment. Elmahdi claimed Evano grabbed his genitals with his hands and kitchen tongs. He also alleged Evano would hold his hands in front of him as if pregnant and tell Elmahdi, "Honey, last night was good sex. I am pregnant. I don't know who is the father." Evano would then walk like he was pregnant.

Elmahdi further testified Evano told him, "You Muslim, in your country you like men, you don't like women," and he had a "gorgeous butt." Elmahdi testified Evano called him "baby," "sugar," and "honey," and told him he had a large penis. Evano denied ever engaging in any of the alleged conduct or making any of the alleged comments.

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

[2]Several of the periods during which Elmahdi alleged the discriminatory practices took place fell outside the applicable statutes of limitations and were summarily dismissed. Elmahdi does not appeal the dismissals based upon the statutes of limitations.

In support of his racial harassment claims, Elmahdi testified Evano once said, "Hey, Boy, go watch your line," and "sometimes" said, "Hey Boy, go watch your buffet." He also claimed Evano once said to him "You Africans have good big penis. That is why the girls go with you." Evano denied ever making such comments.

At the close of the evidence, the district court granted Marriott's motion for judgment as a matter of law (JAML) on Elmahdi's § 1981 race-based hostile work environment claim and ADEA claim. The district court concluded the vast majority of the evidence related to Elmahdi's claims of sexual discrimination and harassment and there was insufficient evidence of race or age discrimination to create a jury question. Accordingly, only Elmahdi's claims of sexual harassment, discriminatory failure to promote, and assault and battery were submitted to the jury. The jury returned verdicts in favor of Marriott and Evano. Elmahdi's motion for a new trial was denied and this appeal followed.

On appeal, Elmahdi argues the district court erred by 1) allowing Marriott and Evano to strike the lone African-American juror, 2) granting JAML as to Elmahdi's race-based hostile work environment claim,[3] 3) excluding various items of evidence at trial, 4) improperly instructing the jury, and 5) granting summary judgment on Elmahdi's claims of discriminatory discharge.

II

A.    Peremptory challenge

During voir dire, Marriott and Evano exercised a peremptory challenge to remove the sole African American venire member from the jury panel. The district

---

[3]Elmahdi has not appealed the district court's grant of JAML as to his ADEA claim.

court conducted a hearing at which Marriott explained the challenged juror was employed by the Kansas City School District, and one of Marriott's attorneys had been involved in a very publicized and acrimonious legal case against the school district a year earlier. Counsel for Evano explained the challenge stating the prospective juror had been a witness in a domestic abuse case and might be overly sensitive to issues of sexual harassment. After considering the explanations the district court allowed the strike. On appeal, Elmahdi argues other similarly situated jurors were not excluded and the offered explanations were a pretext for excluding the juror on the basis of race.

In Edmonson v. Leesville Concrete Co., 500 U.S. 614, 615-16 (1991), the Supreme Court held Batson v. Kentucky, 476 U.S. 79 (1986) (holding race discrimination in the form of exercising peremptory challenges to exclude African-American venire members violates a criminal defendant's fourteenth amendment equal protection rights), applies to private litigants in civil cases because "race-based exclusion violates the equal protection rights of the challenged jurors." Under Edmonson, Elmahdi may raise the excluded juror's rights on her behalf. Id. at 628-29. To establish a Batson claim, Elmahdi must make a prima facie showing that Marriott and Evano exercised the peremptory challenge on the basis of race. United States v. Brooks, 2 F.3d 838, 840 (8th Cir. 1993). Marriott and Evano must then offer race-neutral explanations for the strike, leaving the district court to rule on the ultimate question of intentional discrimination. Id. at 840-41. Here, the district court concluded the proffered reasons were not pretextual, and we will not reverse those findings of fact absent clear error. United States v. Dawn, 897 F.2d 1444, 1447 (8th Cir. 1990).

"[I]n this circuit, it is well established that [a litigant] may not justify peremptory challenges to venire members of one race unless venire members of another race with comparable or similar characteristics are also challenged." Reynolds v. Benefield, 931 F.2d 506, 512 (8th Cir. 1991). A party can establish an

explanation is pretextual by showing characteristics of a stricken black panel member are shared by white panel members who were not stricken. Walton v. Caspari, 916 F.2d 1352, 1361-62 (8th Cir. 1990). Elmahdi argues the offered explanations were pretexual because similarly situated white jurors were not stricken.

Elmahdi first points to an unexcused white juror who was employed by Hallmark, a company represented by Marriott's attorneys, as being similarly situated to the stricken black juror. Elmahdi, however, fails to recognize a fundamental difference in counsel's involvement in the two situations. In the case involving the school district (the black juror's employer), Marriott's attorney was antagonistic to the employer's interests, while in the case involving Hallmark (the white juror's employer), Marriott's attorney was protecting the employer's interests.

Next, Elmahdi claims one of the unchallenged white jurors was similarly situated because he served as a witness in a contract dispute. Marriott and Evano argue the juror was not similarly situated because the issues involved in a contract dispute do not raise the same concerns as a domestic violence case. A juror who has personal involvement with domestic violence may be overly sensitive to issues of unwanted touching and harassment, whereas someone involved in a contract dispute would not.

We agree the white jurors were not comparable or similarly situated, and hold the district court's finding of no purposeful discrimination is not clearly erroneous. The district court's decision to permit the peremptory challenge is affirmed.

B.     Hostile work environment claim - § 1981

At the close of evidence, the district court refused to submit Elmahdi's claim of a racially hostile work environment to the jury. The district court concluded Elmahdi had not presented sufficient evidence to show a severe and pervasive racially

hostile atmosphere. The district court estimated 95-98 percent of the offensive comments attributed to Evano related to the sexual harassment claim, and the racial comments did not rise to the level of a legally cognizable claim of racial harassment.

We review grants of JAML de novo. Manning v. Metro. Life Ins. Co., 127 F.3d 686, 689 (8th Cir. 1997). Claims alleging a hostile work environment under § 1981 are analyzed using the same standards as Title VII claims. Greer v. St. Louis Reg'l Med. Cent., 258 F.3d 843, 847 (8th Cir. 2001). To establish a race-based hostile work environment claim, Elmahdi must show 1) he was a member of a protected group, 2) he was subjected to unwelcome race-based harassment, 3) the harassment was because of his membership in the protected group, and 4) the harassment affected a term, condition, or privilege of his employment. Diaz v. Swift-Eckrich, Inc., 318 F.3d 796, 800 (8th Cir. 2003).

Harassment which is severe and pervasive is deemed to affect a term, condition, or privilege of employment. Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998). For harassment to affect a condition of employment the conduct must be severe "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998).

In determining whether sufficient evidence of a hostile work environment claim has been presented, we consider all of the attendant circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Duncan v. Gen. Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002). To satisfy the "high threshold of actionable harm," Elmahdi has to show his workplace was "permeated with discriminatory intimidation, ridicule, and insult." Duncan, 300 F.3d at 934 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). "[M]ere utterance of an . . . epithet which engenders

offensive feelings in a[n] employee . . . does not sufficiently affect the conditions of employment" to implicate § 1981. Harris, 510 U.S. at 21 (internal quotation marks and citations omitted).

Evano's comments were clearly offensive, but Elmahdi presented insufficient evidence to show the workplace was permeated with racially discriminatory intimidation, ridicule and insult. Elmahdi was called "boy" and "black boy" on a few occasions over a period of years, and Evano once referred to Africans as having big penises.[4] While offensive, the statements do not constitute a "steady barrage of opprobrious racial comment" sufficient to support a § 1981 hostile work claim. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981). Accordingly, we affirm the district court's grant of JAML.

C.      Evidentiary rulings

Elmahdi next contends the district court erred by excluding various items of evidence. We review a district court's exclusion of evidence for a clear abuse of discretion. Adams v. Fuqua Indus., Inc., 820 F.2d 271, 273 (8th Cir. 1987). A district court abuses its discretion if evidence of a critical nature is excluded and there is "no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted" Id.

---

[4]Elmahdi contends Evano's comment about Muslims provides additional support for his race-based hostile work claim. Section 1981 reaches discrimination based on a person's "ancestry or ethnic characteristics." Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987). We question whether Elmahdi's religious beliefs fall within the ambit of "ancestry or ethnic characteristics." We need not, however, decide this issue because Elmahdi's allegations are insufficient even if those additional remarks are considered.

-8-

Elmahdi first argues the district court erred by excluding evidence of the circumstances surrounding his firing and the written report prepared in conjunction with Marriott's investigation into the matter. The district court dismissed Elmahdi's claims of wrongful termination because he failed to show Marriott's proffered legitimate non-discriminatory reason for his termination was pretextual. Thus, the circumstances surrounding his termination were not directly relevant. Elmahdi contends the evidence was nonetheless relevant because the conduct of the guest constituted racial harassment under Marriott's anti-harassment policy. Elmahdi's racial harassment claim, however, was premised on statements made by Evano, not the guest. Therefore the district court properly excluded the evidence.

Elmahdi also argues the investigation conducted by Marriott includes information proving he reported Evano's conduct to Marriott on several occasions. As part of Marriott's investigation into the confrontation with the guest, Elmahdi was interviewed and stated he had reported Evano's conduct to management on several occasions but nothing was done. Even assuming the self-serving statement contained in the report should have been admitted, Elmahdi suffered no prejudice because he was allowed to testify about his alleged reports to Marriott. Thus, any error was harmless.

Elmahdi next argues the district court erred by excluding an evaluation of Evano prepared by Marriott describing him as "sarcastic," "condescending" and "negative" to subordinates, co-workers and superiors. To succeed in his hostile work environment claim, Elmahdi was required to show the harassment was motivated by his membership in a protected group. Diaz, 318 F.3d at 800. The evaluation, however, suggests Evano was antagonistic towards employees generally, irrespective of race or gender. Because Evano's evaluation did not tend to prove his comments were prompted by Elmahdi's membership in a protected class, we see no abuse of discretion in its exclusion.

-9-

Elmahdi also argues the district court erred by refusing to admit a 1993 disciplinary report detailing action taken against Evano for telling a black employee Evano would be "his worst nightmare." The district court sustained Marriott's objection to the evaluation because the incident happened well before the statute of limitations, did not reference any issues of race or sex discrimination or harassment, and would have confused the issues. Elmahdi contends the evaluation was relevant to show the "totality of the circumstances." As with Evano's performance evaluation, this report strongly suggests Evano was difficult to work with and even threatened his subordinates. The report does not, however, suggest Evano reserved his wrath for employees based on race or gender. Thus, the district court was well within its discretion in excluding the report.

Elmahdi next claims the district court erred by refusing to admit a disciplinary report issued following an incident where Elmahdi was found sitting on a dish cart. Elmahdi had written on the back of the report indicating he wanted to speak with Marriott human resources personnel. Elmahdi argues the written comments are evidence he attempted to speak with human resources about Evano but was rebuffed. The district court concluded nothing in the handwritten comments suggested Elmahdi wanted to talk to human resources about anything other than this specific incident, and the report did nothing to further his claims of race or gender discrimination. We agree. Moreover, Elmahdi was allowed to testify about his alleged attempts to speak to human resources about Evano.

Elmahdi's final claim of evidentiary error relates to the district court's refusal to allow evidence relating to an incident in 1994 when a former Marriott employee told Elmahdi he would make him "bend on his knees and scrub the floor with his nails." Elmahdi contends the evidence was relevant because he complained to management and nothing was done. Thus, he argues, the incident was probative of Marriott's indifference to his complaints. Marriott, however, points out the district court excluded the details of the incident but permitted Elmahdi to testify about his

complaint and Marriott's alleged failure to respond. We find no error in the district court's decision to so limit evidence relating to the incident.

### D. Jury instruction

The district court instructed the jury:

> In order to establish that the conduct was "based on" or because of Plaintiff's sex, as indicated in Instruction F, Plaintiff must show that the harasser treated males and females differently in a mixed gender environment or that the harassment is motivated by sexual desire or special attention to plaintiff as a male. If Plaintiff fails to establish any of these elements, you must return a verdict in favor of Defendant, on the sexual harassment claim.

Appellant's App. I 105 (Jury Instruction H).

Elmahdi argues the instruction improperly limited his ability to prove sexual harassment by requiring him to prove Evano was motivated by sexual desire or paid special attention to him as a male. Elmahdi further contends the instruction conflicts with Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1378-79 (8th Cir. 1996), which held physical attacks directed at sexual organs may constitute sexual harassment even though not motivated by sexual interest.

Initially, we note Elmahdi did not raise this argument at trial. Instead, Elmahdi's counsel objected to the instruction as requiring proof of different treatment *and* sexual motivation. After realizing the instruction required only one showing or the other, counsel withdrew the objection. Because no objection was raised, we review the instruction for plain error only. Horstmyer v. Black & Decker (U.S.) Inc., 151 F.3d 765, 771-72 (8th Cir. 1998).

-11-

"Plain error review is narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or pubic reputation of the judicial proceedings." Chem-Trend Inc. v. Newport Indus. Inc., 279 F.3d 625, 629 (8th Cir. 2002) (internal quotations omitted). The verdict should be reversed only if any error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected. Id.

Elmahdi is correct in arguing sexual harassment need not be motivated by sexual desire or interest. He is incorrect, however, in contending the instruction conflicts with the holding in Quick. In Quick, the plaintiff sued for sexual harassment after he was repeatedly struck in the genitals by other male employees. 90 F.3d at 1374. The district court characterized the conduct as hooliganism and dismissed the claim finding the challenged conduct was not of a genuine sexual nature and therefore not sexual harassment. Id. at 1378-79. This court reversed, finding it unnecessary to prove the conduct was explicitly sexual in nature. Rather, "[t]he proper inquiry for determining whether discrimination was based on sex is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. at 1379 (internal quotations and citation omitted). This is precisely what the instruction here required the jury to find. Elmahdi was required to prove Evano's comments and actions were motivated by sexual desire or special attention to Elmahdi as a male *or* that Evano treated males and females differently in a mixed gender environment. We find no error in the district court's instruction to the jury.

E.    Wrongful termination

Elmahdi's final claim of error relates to the district court's summary dismissal of his claims for wrongful termination based on race and sex. We review the district court's grant of summary judgment de novo. Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment is proper if the evidence, viewed in

the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

Elmahdi's Title VII claims for race and sex discrimination are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under this framework, a Title VII plaintiff has the initial burden of establishing a prima facie case of discrimination. Hill v. St. Louis Univ., 123 F.3d 1114, 1119 (8th Cir. 1997). If successful, a rebuttable presumption of discrimination arises. Id. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. Once the employer articulates such a reason, the presumption of discrimination disappears and the plaintiff bears the burden of proving the employer's proffered reason is merely a pretext for discriminatory animus. Id. At all times, the plaintiff retains the ultimate burden of proving he was illegally discriminated against. Ruby v. Springfield R-12 Public Sch. Dist., 76 F.3d 909, 912 (8th Cir. 1996).

To present a prima facie case of discriminatory discharge, Elmahdi was required to show 1) he was a member of a protected class, 2) he was qualified for the position, and 3) despite his qualifications he was discharged. Ruby, 76 F.3d at 911. We assume, without deciding, Elmahdi has met these requirements, thus creating a rebuttable presumption of discrimination. Hill, 123 F.3d at 1119. Marriott rebutted the presumption, however, by articulating a legitimate nondiscriminatory reason for Elmahdi's discharge; namely, his altercation with the intoxicated guest. The question before us, then, is whether Elmahdi produced sufficient evidence to show Marriott's proffered reason was merely a pretext for race or sex discrimination. Duffy v. Wolle, 123 F.3d 1026, 1036 (8th Cir. 1997).

Elmahdi contends a white employee who came to work drunk and vomited in a trash can was not terminated despite his serious violation of company policy.

-13-

Elmahdi contends the incident shows Marriott's proffered reason is pretextual because black employees were disciplined more harshly than white employees. Our review of the record, however, discloses nothing to indicate Marriott was aware of the incident. As for his claim of sex-based discrimination, Elmahdi offers no argument tending to show Marriott's reason for terminating him was pretextual. Accordingly, the district court's grant of summary judgment is affirmed.

III

For the reasons stated herein, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.