# IN THE COURT OF APPEALS OF IOWA

No. 18-0946
Filed October 9, 2019

**QASIM ALI BALOCH,**
       Plaintiff-Appellant,

**vs.**

**PIONEER HI-BRED INTERNATIONAL, INC.**
       Defendant-Appellee.
_____

       Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.

       Qasim Baloch appeals the district court's denial of his motion for new trial

after a jury returned a verdict in favor of Pioneer Hi-Bred International, Inc. on his

claims of employment discrimination. **AFFIRMED.**

       Amanda M. Bartusek and Bruce H. Stoltze Jr. of Stoltze & Stoltze, PLC,

Des Moines, for appellant.

       Christopher E. Hoyme and Jacqueline F. Langland of Jackson Lewis, P.C.,

Omaha, Nebraska, for appellees.

       Heard by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

Qasim Baloch, a person of Pakistani origin and a practicing Muslim, was employed by Pioneer Hi-Bred International, Inc. (Pioneer) in the information technology department. After tendering his resignation, Baloch sued Pioneer and others for employment discrimination. All the defendants except Pioneer were dismissed. Following trial, a jury determined Baloch failed to prove his claims. The district court subsequently denied his new trial motion.

On appeal, Baloch challenges (I) the sufficiency of the evidence supporting the jury verdict; (II) defense references to prior lawsuits; (III) the district court's refusal to rescind Pioneer's peremptory strikes of two jurors; and (IV) the district court's decision to instruct the jury on his failure to mitigate damages.

## I. *Sufficiency of the Evidence*

Four of Baloch's claims were submitted to the jury: (1) national origin and religion discrimination; (2) national origin, race, and/or religion harassment; (3) retaliation; and (4) failure to accommodate religion.[1] The district court instructed the jury on the elements of proof for each cause of action.

For the national origin and religion discrimination cause of action, the jury was instructed Baloch had to prove the following:

> (1) [H]e had a protected characteristic. The parties stipulate that [he] had the protected characteristic of national origin because he was from Pakistan and that he had the protected religious characteristic of being Muslim.
> (2) Pioneer took adverse employment action against him.
> (3) [His] religion and/or origin was a motivating factor in the decisions of Pioneer to take the adverse employment action.

---

[1] Baloch also raised a claim of hostile work environment based on disability; the district court dismissed that claim on Pioneer's unresisted motion for summary judgment.

For harassment, the jury was instructed Baloch had to prove:

(1) [He] was subjected to offensive conduct by employees of Pioneer while employed at the company.

(2) Such conduct was unwelcome.

(3) [His] national origin, religion, and/or race was a motivating factor in such conduct.

(4) This conduct was sufficiently severe or pervasive that a reasonable person in [his] position would find his work environment was hostile.

(5) At the time this conduct occurred and as a result of this conduct, [he] reasonably believed that the work environment was hostile.

(6) Pioneer knew or should have known of the occurrence of one or more national origin, religious and/or racially harassing incidents.

(7) Pioneer failed to take prompt and appropriate remedial action to end the harassment.

(8) Pioneer acted negligently in creating or continuing a hostile work environment.

For retaliation, the jury was instructed Baloch had to prove: "(1) [He] engaged in protected activity[,] (2) Pioneer took adverse action against [him, and] (3) The protected activity was a motivating factor in Pioneer's decision to take the adverse action."

For failure to accommodate religion, the jury was instructed Baloch had to prove: "(1) [He] made an accommodation request that he be given a place to pray[, and] (2) Pioneer denied the request."  As noted, the jury found for Pioneer on all four claims.

Baloch contends "there was not substantial evidence to support the verdict of the jury."  *See City of Cedar Falls v. Cedar Falls Cmty. Sch. Dist.*, 617 N.W.2d 11, 16 (Iowa 2000).  In his view, "[T]he ever-increasing scrutiny on [him] caused him to be constructively discharged and suffer damages after he had complained"; "[i]t was undisputed that [he] was treated differently than other members of his . . .

team on the basis of his national origin and religion"; and he "was paid less than other employees who were employed to complete the same work as him." Although Baloch does not tie these assertions to the claims or elements set forth above, we believe they implicate (A) the "adverse employment action" and "adverse action" elements of the national origin and religion discrimination and retaliation claims as well as (B) the "motivating factor" element of the national origin and religion discrimination, harassment, and retaliation claims.

### A. Adverse Employment Action / Adverse Action

"Adverse employment action" was defined for the jury as "a tangible change in working conditions that produces a material employment disadvantage." "Adverse action" in the context of the retaliation claim was defined as follows:

> "Adverse action" means any action which has material consequences to an employee. It is anything that might dissuade a reasonable person from making or supporting an allegation of harassment. You should judge whether an action is sufficiently adverse from the point of view of a reasonable person in the plaintiff's position.

As noted at the outset, Baloch resigned from his job at Pioneer, but he contends his resignation amounted to a constructive discharge from employment. *See Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 603 (Iowa 2017) (Cady, C.J., concurring in part and dissenting in part) (stating constructive discharge may constitute adverse employment action or adverse action for purposes of discrimination and retaliation claims). The district court defined "constructive discharge" for the jury as follows:

> An employee is constructively discharged if the employer deliberately makes his working conditions "intolerable" so that the employee reasonably feels forced to quit. The work environment need not literally be unbearable to be intolerable under the law. The

employer need not really want the employee to quit. It is sufficient that the employee's resignation was a reasonably foreseeable consequence of the working conditions created or permitted by the employer.

A reasonable juror could have found the following facts on the question of constructive discharge. Baloch's job was to "develop[] software." Baloch initially received positive performance evaluations but, after several years, the tenor of the assessments changed. In time, Pioneer determined he failed to meet expectations.

The negative evaluations coincided with a change in Baloch's work team. Baloch testified he noticed a difference in the way he was treated relative to other team members "[a]lmost right away." In particular, the person who was responsible for ensuring efficiency in the new team's processes "talked down" "[a]nything . . . [he] would say or suggest." She also reduced his estimates of time it would take to complete a project and "encouraged others to reduce [his] estimates." According to Baloch, she "discouraged people from talking to [him] . . . [e]ven though [they were] in the same room and the whole point [was] . . . to collaborate and get things done together." In Baloch's words, "It's all these guys and then this guy. That's the thing that she created." Baloch believed the different treatment was "based on [his] being Pakistani and . . . being a Muslim."

Baloch complained about his treatment. In his view, the human resources department "concluded in their investigation . . . that all . . . teams across Pioneer could use clarification of roles and responsibilities." Baloch subsequently took a three-month approved leave of absence for health reasons. On his return, he complained again, asserting he had been "singled out" and "continually harassed

and accused of not performing without real grounds." Before the second complaint was resolved, Baloch resigned. He cited the "hostile work environment," including inordinate scrutiny and performance requirements that, in his view, set him up to fail. He explained that the treatment "only occurred after [he] filed a complaint to the Iowa Civil Rights Commission" and was in retaliation for "pursuing [his] rights."

Pioneer disputed Baloch's version of events. The efficiency coordinator, known internally as the "scrum master," described Baloch's performance on the team as "[p]oor." She asked her supervisor "to have another developer" on the team. She told the supervisor that "Mr. Baloch had devoted a lot of hours to the project and so far there was nothing to show for it." The supervisor assigned her another developer but told the scrum master "to keep Mr. Baloch" and switch to a different methodology for developing applications, known as the "scrum" methodology.

Team members complained to the scrum master about Baloch's performance and she again "asked to have Mr. Baloch removed from the team." She also asked to have a "Caucasian" man removed from the team for "lack of productivity," the same reason cited for Baloch's requested removal. In addition, she cited Baloch's "disruptive" behavior "in meetings." The "Caucasian" man was removed; Baloch was not. *See Farmland Foods, Inc. v. Dubuque Human Rights Comm'n,* 672 N.W.2d 733, 745 (Iowa 2003) ("The discriminatory intimidation, ridicule, and insult must be motivated by a worker's membership in a protected group.").

The scrum master stated that her two requests to have Baloch removed predated his internal complaint. She pointed out that an investigation into Baloch's

first complaint "cleared" her of wrongdoing. She acknowledged having to "to do some additional training" and noted she provided the training to all members of the team, including Baloch. On Baloch's return from his leave of absence, Pioneer agreed to give him a "one month ramp-up" period before resuming full productivity expectations. The scrum master testified that, after Baloch returned to full capacity, his performance remained "[p]oor" and "never really got better for any sustained period of time."

The scrum master denied altering Baloch's time estimates. She summarized productivity percentages for the team members and reiterated that Baloch was "less productive than the other developers." She acknowledged Baloch "might have been called out more" during meetings but underscored that it was "because his performance was poor." She stated, "I don't believe I singled Mr. Baloch out due to anything other than his performance." The scrum master conceded not wanting Baloch to return to her team following his leave of absence but stated it was because "[h]e was unproductive, and [she] thought the team would do better without him." The human resource department concluded Baloch was not "singled out."

A reasonable juror could have found from this divergent testimony that Baloch did not resign because Pioneer "deliberately ma[de] his working conditions 'intolerable' so that [he] reasonably fe[lt] forced to quit," as required for a finding of constructive discharge. And a reasonable juror could have found that Pioneer did not take the actions it did to "dissuade a reasonable person from making or supporting an allegation of harassment," as required to establish adverse action for a retaliation claim.

Baloch next argues he resigned because he was paid at a lower rate than others who performed the same job. A reduction in pay and benefits may constitute adverse employment action for purposes of the race and religion discrimination claim and adverse action for purposes of the retaliation claim. *See City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 536 (Iowa 1996). A reasonable juror could have found the following facts on Baloch's pay. Baloch testified he "complained internally" about "being paid 8 and $9,000 less per year." Pioneer did not agree to increase his salary. Baloch proceeded to file a complaint with the federal Department of Labor. The department ruled in his favor and Pioneer paid him $11,534.55 in back pay. Baloch conceded "performance increases" allowed him to reach the wage base required by the department.

Based on Baloch's own testimony, a reasonable juror could have found that Pioneer resolved the differential pay issue and it could not serve as the basis for a finding of adverse employment action or adverse action.

### B. Motivating Factor

The district court gave a jury instruction defining "motivating factor" as follows: "Mr. Baloch's religion and/or national origin was a motivating factor in his treatment if religion and/or national origin were a factor in the alleged adverse employment actions toward him. However, his national origin and/or religion need not have been the only reason for Pioneer's actions." As noted, the same "motivating factor" causation standard was included in the jury instruction on retaliation.[2]

---

[2] In *Haskenhoff*, a plurality of the Iowa Supreme Court held the correct causation standard for alleged retaliatory discharge was the "significant factor" rather than the "motivating

A reasonable juror could have considered the testimony of multiple witnesses, who described Baloch's poor performance. One member of Baloch's team said he "just was frustrated that things seemed to take a lot longer to accomplish and require[d] a lot of explanation and re-explanation just to do sometimes, . . . things that [team member] didn't consider very complicated." He continued, "I'm not saying it was constantly . . . bad, but there were consistently occurrences where I felt like . . . I had to keep re-explaining things, or a code would be turned over from [Baloch] to myself and I would go test it and things wouldn't work." As discussed, the team's scrum master seconded these concerns. Based on the testimony of record, a reasonable juror could have found that Baloch's performance, rather than his nationality or religion, was the motivating factor for his treatment. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (stating a "factual dispute was for the jury to resolve").

Substantial evidence supports the jury verdict. We affirm the verdict and the district court's denial of Baloch's new trial motion based on a claimed insufficiency of the evidence.

## II. *Questions Regarding Damages from Prior Lawsuits*

Prior to trial, Baloch filed a motion in limine seeking in part to exclude: "[A]ny testimony brought by [Pioneer] attempting to argue that [Baloch] already received

---

factor" standard. 897 N.W.2d at 583. The court stated "the district court should have instructed the jury that Haskenhoff must prove the protected activity was a significant factor motivating the adverse action, consistent with our precedent." *Id.* at 586. Pioneer objected to the cited language at trial, stating "we feel the appropriate standard is in fact significant or substantial factor rather than motivating factor." The district court examined "each of the justices' positions in [*Haskenhoff*]" and concluded "the appropriate standard here is motivating factor." Having prevailed under the lower standard, Pioneer understandably did not file a cross-appeal to reprise its challenge to the instruction.

compensation as it is irrelevant under [Iowa Rules of Evidence] 5.401, 5.402, and 5.403, and violates the collateral source doctrine." The evidence related to Baloch's settlement of lawsuits arising from two car accidents. Pioneer resisted the motion arguing in part that "[e]vidence of receipt of payment from other sources [was] admissible for purposes other than reducing [Baloch]'s damages by the sum received." The court reserved ruling on the motion but stated "for our purposes right now, just don't mention that issue until we've had a chance to look into it further."

At trial, Pioneer's attorney failed to heed the court's admonition and proceeded to question Baloch about the car accidents as follows:

> PIONEER'S COUNSEL: Now, the—And you had mentioned that one of the reasons or one of the factors why you did not accept the job offer from Wellmark was because of some physical injuries; is that right? A. Yes.
>
> Q. And those physical injuries arose from a car accident that you had? A. Yes.
>
> Q. And when was that car accident? A. In March 2012 and then again in November 2013.
>
> Q. Two different accidents? A. Yes.
>
> Q. And as a result of those accidents, you filed lawsuits, did you, as an injured person? A. Yes.
>
> Q. And how many lawsuits? A. I believe—Again, I'm not a lawyer.
>
> Q. One for each accident? A. I don't recall exactly because I'm not a lawyer.
>
> Q. Might you have filed two lawsuits for one of the accidents?
>
> BALOCH'S COUNSEL: Object as to lack of foundation and for some of the same reasons stated in the motion in limine.
>
> COURT: I'll sustain it based upon the foundation objection.
>
> Q. Now, in your lawsuits rising out of the car accidents, you sought damages, sought to recover money damages; right? A. "Damages" is a very generic term.
>
> BALOCH'S COUNSEL: Objection. And can we approach, Your Honor?
>
> COURT: Sure.

Baloch moved for a mistrial. The district court denied the mistrial motion but ruled Pioneer's attorney could not pursue the line of questioning about money damages.

Baloch reprised the issue in his new trial motion. The district court denied the motion, reasoning as follows:

> [Baloch] was seeking back wages from Pioneer asserting that their actions caused his loss of wages. He testified that he did not accept post-resignation job offers from other employers because he was suffering from physical injuries from the car accidents. It was proper for Pioneer to inquire about these accidents. The court did not allow any questioning about the settlement or damages he might have received as a result of those accidents.

On appeal, Baloch contends "[t]he statement should not have been admitted at trial and the appropriate remedy was mistrial." Baloch essentially conceded the relevance and admissibility of testimony about his injuries from the accidents and whether they precluded him from obtaining employment. Accordingly, the "statement" to which he refers is presumably the final question about money damages.

That question was irrelevant to any issue in the case. *See* Iowa R. Evid. 5.401 ("Evidence is relevant if . . . [i]t has any tendency to make a fact more or less probable than it would be without the evidence" and "[t]he fact is of consequence in determining the action."); *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 156 (Iowa 2004) ("The collateral source rule is a common law rule of evidence that bars evidence of compensation received by an injured party from a collateral source."). But because Baloch raised a timely objection and prevailed on his request to bar an answer to the question, we conclude Baloch was not prejudiced. *See State v. Thomas*, 766 N.W.2d 263, 271 (Iowa Ct. App. 2009) ("We presume prejudice from the admission of irrelevant evidence. Accordingly, reversal is required unless the

record shows a lack of prejudice."). Accordingly, we affirm the district court's denial of Baloch's mistrial and new trial motions.

### III.     *Batson-Style Challenge*

During jury selection, both sides exercised three peremptory strikes. Baloch objected to Pioneer's strikes, arguing they were discriminatory. Baloch noted that Jurors 3 and 10 "were both . . . minorities" and Juror 5 had "a brother-in-law who is a minority and a Muslim." Pioneer responded that Juror 3 was stricken "because she clearly indicated that her employer had terminated her employment and had her escorted out, and she found that—or we inferred that she found that very unfair, and it was for that reason primarily she was struck." Pioneer stated Juror 5 was stricken because "she . . . indicated she thought there was widespread discrimination against Muslims in the United States."

The district court reinstated Juror 10 but declined to reinstate Jurors 3 and 5. The court concluded Juror 3's "statements about how she was terminated establish[ed] a nonracially-motivated reason for striking her." The court characterized Juror 5's "comments as being an indication that maybe she would sympathize with [Baloch] based upon her particular circumstances that she outlined" and found it is "a permissible peremptory strike, if it is believed that the juror would be sympathetic to the party who is raising the *Batson* challenge theory or would simply be sympathetic to that person's position in the case."

On appeal, Baloch contends the court's ruling was erroneous. Our review of this constitutional issue is de novo. *See State v. Mootz*, 808 N.W.2d 207, 214 (Iowa 2012).

"[C]ourts must entertain a challenge to a private litigant's racially discriminatory use of peremptory challenges in a civil trial." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 630 (1991); *see also Batson v Kentucky*, 476 U.S. 79, 96–98 (1986) (concluding "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial"; "[o]nce the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors"; and "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination"); *State v. Mootz*, 808 N.W.2d 207, 215 (Iowa 2012) (describing the three-step test for determining whether "a litigant is using peremptory challenges to engage in purposeful racial discrimination"); *Kiray v. Hy-Vee, Inc.*, 716 N.W.2d 193, 205 (Iowa Ct. App. 2006) (noting "*Batson* was applied to civil cases in *Edmonson*").

In determining whether a prima facie case of discrimination has been made, "the court may consider all relevant circumstances, including a pattern of strikes against jurors of a particular race." *Mootz*, 808 N.W.2d at 215. "The prima facie case requirement, however, becomes moot when the party attempting to strike a juror offers a race-neutral explanation for the peremptory challenge." *Id.* "Unless a discriminatory intent is inherent in the [attorney's] explanation, the reason offered will be deemed race neutral." *Id.* at 218 (citation omitted). "It is not until step three 'that the persuasiveness of the justification becomes relevant.'" *Id.* (citation omitted). The pattern of strikes may become important in determining whether the proffered reasons for the strikes were pretextual. *See Elmahdi v. Marriott Hotel*

*Servs.*, *Inc.*, 339 F.3d 645, 651–52 (8th Cir. 2003) (stating, "[I]n [the Eighth C]ircuit, it is well established that [a litigant] may not justify peremptory challenges to venire members of one race unless venire members of another race with comparable or similar characteristics are also challenged" and "[a] party can establish an explanation is pretextual by showing characteristics of a stricken black panel member are shared by white panel members who were not stricken" (citations omitted)); *see also Kiray*, 716 N.W.2d at 207 (citing attorney's explanation that "he struck a white juror for the very same beliefs" as an African-American juror).

Baloch argues Pioneer's proffered reason for striking Juror 3 was pretextual. He points to the fact that Pioneer struck Jurors 10 and 3—both minorities—and he makes reference to "the pattern of strikes," including a pattern of not striking white members of the jury venire with comparable employment experiences.

Baloch faces two hurdles. First, the record lacks clarity on the race or ethnicity of the venire members who were questioned about their employment experiences. Second, the two individuals Baloch identified during oral argument as similarly situated to Juror 3 were not similarly situated. Although the first individual stated he was effectively terminated from his employment,[3] he also said he agreed with the employer's decision, characterizing it as "probably in the best interest of the parties." As the district court found, Juror 3, in contrast, may have harbored ill-will towards her employer based on the manner in which she was terminated. The employment experience of the second individual identified by

---

[3] He stated, "I was basically told that I could put up or shut up. So they determined it was time for me to leave."

Baloch as similarly situated was even more attenuated. He was not terminated; rather, he "had to terminate" an employee "who wasn't performing up to what had been established." Because these individuals had non-comparable employment experiences, we conclude Baloch did not establish that Pioneer's peremptory strike of Juror 3 was pretextual.

We turn to Juror 5. As noted, Pioneer's stated reason for striking Juror 5 was her belief that "there was widespread discrimination against Muslims in the United States." Baloch argues Pioneer's failure to ferret out "bias or sympathies" in this juror establishes that the strike was pretextual. We are unpersuaded.

In an early discussion with the parties, the court presaged its conclusion that juror sympathy was a permissible non-discriminatory reason for a strike. The court informed them that it was "appropriate for both parties to determine if anybody on the jury would have . . . cultural bias because somebody is from a particular country or somebody is from a particular religion or practices a certain religion." Baloch's attorney followed up by stating she intended to ask, "[D]oes anyone believe discrimination against Muslims in the United States is a problem[?]" The court agreed the question might be personal and sensitive but declined to prohibit it. The court simply asked Baloch's attorney to request a private discussion if a juror answered yes to the question.

The district court correctly concluded that the potential juror's sympathetic stance toward one of the parties was a permissible consideration in striking the juror. *See State v. Mootz*, 808 N.W.2d 207, 224 (Iowa 2012) (noting defendant "properly sought to remove" juror who he believed "would be sympathetic to the State's case against him"); *Dawson v. State*, No. 17-1679, 2019 WL 1940727, at *7

(Iowa Ct. App. May 1, 2019) (noting counsel's "choice to try to get more women on the jury" based on her belief they "were more likely to be sympathetic jurors" in a domestic violence case was a strategic decision); *see also State v. Pendleton*, 725 N.W.2d 717, 727 (Minn. 2007) ("The state's decision to challenge jurors that it believed were sympathetic to the defendant's case is a permissible use of its challenges."). On our de novo review, we conclude the district court acted appropriately in denying Baloch's challenges to Pioneer's peremptory strikes of Jurors 3 and 5.

## IV. *Failure-to-Mitigate Affirmative Defense*

Baloch was offered several jobs with other employers after he resigned from Pioneer. He did not accept the job offers. Pioneer raised the affirmative defense of Baloch's failure to mitigate damages. Baloch responded by filing a motion in limine seeking to exclude evidence of the affirmative defense. The district court took a wait-and-see approach, ruling that, if Pioneer presented sufficient evidence of failure to mitigate, the court would instruct the jury on the affirmative defense.

During trial, Baloch moved for a directed verdict on failure to mitigate damages. The district court overruled the motion, finding "sufficient facts" to generate a jury question. Over Baloch's objection, the court gave a jury instruction on mitigation of damages. Baloch raised the issue again in his new trial motion. The district court denied the motion, reasoning as follows:

> [T]he court determined that the jury had substantial evidence before it to determine if Mr. Baloch's actions with regard to the earlier job offers were such that it was reasonable for him to accept one of the jobs and whether it was unreasonable for him not to do so.
> Even if there was not substantial evidence in the record to support the submission of the mitigation of damages defense the error was not prejudicial to plaintiff. The jury determined that Mr.

Baloch failed to prove any of the four claims he alleged against Pioneer. On each count the jury determined that Mr. Baloch failed to prove the elements of his claim. The jury, as is evident from their answers to the special verdicts, never considered damages. Thus, they never considered whether Pioneer proved their defense that Mr. Baloch failed to mitigate his damages.

On appeal, Baloch reprises his challenge to the court's submission of the mitigation-of-damages instruction, arguing the evidence was insufficient to support the instruction. He specifically asserts that Pioneer "failed . . . to bring forth evidence that he was capable of working those jobs that [were] turned down."

"Proposed instructions must enjoy support in the pleadings and substantial evidence in the record." *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 473 (Iowa 2017) (citation omitted). "A trial court must refuse to instruct on an issue having no substantial evidential support or which rests on speculation." *Greenwood v. Mitchell*, 621 N.W.2d 200, 204 (Iowa 2001) (internal quotations and citation omitted).

The jury instruction stated:

Mr. Baloch has a duty to exercise ordinary care to reduce, minimize, or limit his damages. However, Mr. Baloch has no duty to do something that is unreasonable under the circumstances or that he is incapable of doing.
To prove Pioneer's claim of failure to mitigate, Pioneer must prove all of the following:
1. There was employment that Mr. Baloch could have accepted;
2. Requiring him to do so was reasonable under the circumstances;
3. Mr. Baloch acted unreasonably in failing to accept the employment offer; and
4. His failure to accept the employment offer caused an identifiable portion of his damages.

On direct examination, Baloch testified that he received job offers after he resigned from Pioneer, but health conditions precipitated by the work environment

at Pioneer prevented him from taking the jobs. Pioneer cross-examined Baloch about this rationale, eliciting admissions that no doctor advised him to decline the job offers.

Baloch's own testimony on direct and cross-examination generated a jury question on his ability to perform the jobs he turned down. The testimony amounted to substantial evidence in support of the mitigation-of-damages instruction. We conclude the district court did not err in denying Baloch's motion for directed verdict and his motion for new trial. We affirm the court's submission of the jury instruction on mitigation of damages.

**AFFIRMED.**