# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1478

_____

James A. McCown,

    Plaintiff-Appellant,

v.

St. John's Health System, Inc.; Sisters
of Mercy Health System; Lloyd Solar;
William Syler; Robert Hammons; Paul
Elmore; John Swope; Robert Norton;
St. John's Regional Health Center

    Defendant-Appellee.

\*   Appeal from the United States
\*   District Court for the Western District
\*   of Missouri

_____

Submitted: September 11, 2003
Filed: November 12, 2003

_____

Before MELLOY, RICHARD S. ARNOLD, and FAGG, Circuit Judges.
_____

MELLOY, Circuit Judge.

James Christopher McCown ("McCown") appeals the district court's[1] entry of summary judgment in favor of St. John's Regional Health Center ("St. John's") on

_____

[1]The Honorable James C. England, United States Magistrate Judge for the Western District of Missouri, presiding by consent of the parties under 28 U.S.C.A. § 636(c)(1).

sexual harassment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2000), and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010, et seq. (2000). We affirm.

I. Background

McCown was employed by St. John's as a general construction worker from October 1994 until April 2001. Until October 2000, McCown worked in the projects shop, under the direct supervision of Lloyd Soller[2] ("Soller"). During this time period, Soller subjected McCown to inappropriate conduct on multiple occasions including: grabbing McCown by the waist, chest and buttocks; grinding his genitals against McCown's buttocks in simulated intercourse; telling McCown to "squeal like a pig, or a woman," and making other lewd comments; attempting to stick the handle of a shovel and a tape measure in McCown's anus; and kicking McCown in the buttocks. Initially, McCown thought that Soller was kidding. Although McCown did not understand what motivated Soller's behavior, he speculated that Soller was trying to "irritate" him because "that's just how Lloyd was." McCown repeatedly asked Soller to stop, but Soller continued to engage in this offensive behavior.

While both male and female employees worked in the projects shop with McCown and Soller, the women primarily worked in the office while the men performed physical labor in various other locations. Soller, however, only supervised the men. There is no evidence in the record that Soller ever sexually harassed any of the women in the projects shop.

McCown reported Soller's inappropriate behavior to Soller's supervisors on three different occasions. Dissatisfied with their response, McCown formally filed

---

[2]Soller's name is spelled incorrectly in the district court's caption of the case and appears as "Solar."

a complaint with the EEOC and the Missouri Commission on Human Rights. Eventually, Soller's supervisors conducted an internal investigation and removed McCown from Soller's supervision while giving Soller a disciplinary warning. McCown worked in seclusion from the other employees in the projects shop and was placed under the supervision of two managers. As a result, McCown often received contradictory job orders. Frustrated by his new working conditions, McCown resigned from St. John's in April 2001.

McCown filed suit against St. John's alleging same-sex sexual harassment, disparate treatment because of gender, retaliation, and constructive discharge in violation of Title VII and the Missouri Human Rights Act. The district court granted summary judgment on each claim. Presently, McCown appeals solely on the sexual harassment claim and argues that the district court erred in determining that he failed to state an actionable claim because he could not demonstrate that Soller's conduct was based on sex.

## II. Analysis

We review a grant of summary judgment de novo. Quick v. Donaldson Co., 90 F.3d 1372, 1376 (8th Cir. 1996). A party is entitled to judgment as a matter of law only if it can show that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986). Summary judgment is to be granted where the evidence is such that no reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. The evidence must be viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. Id. at 255; Calder v. TCI Cablevision of Missouri, Inc., 298 F.3d 723, 728 (8th Cir. 2002).

"Title VII prohibits 'an employer' from discriminating 'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex.'" Quick, 90 F.3d at 1377 (quoting 42 U.S.C. § 2000e-2(a)(1)) .

Discrimination based on sex which creates a hostile or abusive working environment violates Title VII. Id. To state a claim for sexual discrimination based on a hostile work environment under Title VII, a plaintiff must show: (1) he belongs to a protected group; (2) he was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action. Id. (citations omitted). The third element, whether Soller's harassment was based on sex, is the single issue on appeal.

Same-sex harassment claims differ from those between males and females because the latter "typically involve[] explicit or implicit proposals of sexual activity," which create a presumption that the underlying conduct was based on sex. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). However, this presumption is applicable only if there is credible evidence to show that the alleged harasser is sexually attracted to the plaintiff. Id. Consequently, without this presumption, a same-sex harassment plaintiff needs other methods to prove that the conduct was based on sex. Id.

Oncale, the leading Supreme Court case on same-sex harassment claims, sets forth three evidentiary routes by which a same-sex plaintiff can show that the conduct was based on sex. Id. at 80-81. First, a plaintiff can show that the conduct was motivated by sexual desire . Id. at 80. Second, a plaintiff can show that the harasser was motivated by a general hostility to the presence of the same gender in the workplace. Id. And third, a plaintiff may offer direct comparative evidence about how the harasser treated both males and females in a mixed-sex workplace. Id. at 80-81; see also Elmahdi v. Marriott Hotel Servs., Inc., 339 F.3d 645, 655 (8th Cir. 2003) (in determining whether discrimination was based on sex, the plaintiff is required to prove the harasser's comments were motivated either by sexual desire, special attention to plaintiff as a male, or that harasser treated males and females differently

in a mixed gender environment). Oncale also emphasizes that "whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of . . . sex.'" Oncale, 523 U.S. at 81 (emphasis and alteration in original) (quoting 42 U.S.C. § 2000e-2(a)(1)).

There is no evidence in the record to demonstrate that Soller was homosexual and motivated by sexual desire toward McCown. Nor is there evidence that Soller was motivated by a general hostility to the presence of males in the workplace. Instead, according to McCown, it appears that Soller was just trying to "irritate" him because "that's just how Lloyd was." Additionally, we have previously found that crude gender-specific vulgarity is not, by itself, probative of gender discrimination. See Linville v. Sears, Roebuck & Co., 335 F.3d 822, 824 (8th Cir. 2003) (per curiam) (finding that employer's backhanding plaintiff in the scrotum and laughing "was probative of crude, gender-specific vulgarity [but] . . . was not, by itself, probative of gender discrimination"). Thus, we must consider whether McCown can offer direct comparative evidence of how Soller treated males and females in a mixed-sex workplace to determine if Soller's conduct was based on sex.

The key inquiry under Title VII is "'whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" Oncale, 523 U.S. at 80 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). In other words, Title VII does not prohibit workplace harassment unless it is based on sex. In this case, there is no evidence to demonstrate that the area of the projects shop in which McCown worked was a mixed-sex workplace. The only evidence before us is an affidavit by McCown stating that the "workplace consisted of both men and women, although women worked primarily in the offices." The record indicates that Soller only supervised the men who worked outside the office area of the projects shop in which the women worked. The record is silent as to the amount of interaction that Soller had with the women in the office area of the projects shop.

Even if the projects shop did qualify as a mixed-sex workplace, the only evidence of Soller's treatment towards women is found in McCown's affidavit which states McCown never knew of Soller sexually harassing female employees in the workplace. McCown's express absence of knowledge is not sufficient to generate a jury question as to whether Soller's conduct constituted "discrimina[tion] . . . because of . . . sex." 42 U.S.C. § 2000e-2(a)(1).

Although Soller's conduct was inappropriate and vulgar, there is insufficient evidence to demonstrate that Soller's conduct towards McCown was based on sex.

Accordingly, we affirm.

_____